IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FABIAN JOHNSON,

              Plaintiff,

OPINION AND ORDER

      v.

19-cv-543-bbc

DANIEL GOFF, TRINA KROENING-SKIME,
GARY BOUGHTON AND JULIE PAYNE,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Fabian Johnson, who is incarcerated at the Fox Lake Correctional Institution, is proceeding on claims that prison staff and administrators at the Wisconsin Secure Program Facility failed to provide him the Ramadan fasting diet in 2019, in violation of his rights under the free exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Before the court is defendants' motion for summary judgment. Dkt. #18. (I have revised the caption to reflect the correct spelling of defendants' names.)

      For the reasons set out below, I am granting defendants' motion with respect to all of plaintiff's claims except for his RLUIPA and First Amendment claims for injunctive relief regarding the prison policy setting a 60-day deadline to sign up for Ramadan meals. Those claims must be resolved in further proceedings because factual disputes exist over whether the policy substantially burdened plaintiff's religious practice and whether the policy is the least restrictive means of furthering compelling state interests. Although plaintiff named as the defendants for these claims Gary Boughton (the warden), Daniel Goff (the chaplain),

1

and Trina Kroening-Skime (program director), the facts show that the policy at issue is not specific to the Wisconsin Secure Program Facility.  Because plaintiff is no longer at that facility, I will substitute Willard West, the religious practices coordinator for the Division of Adult Institutions, as the sole defendant.  Finally, because the only remedies available to plaintiff are equitable in nature, the court will strike the jury trial and give the parties an opportunity to submit additional evidence and argument as to the remaining issues in this case.

From the parties' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A.  The Parties

Plaintiff is currently incarcerated at the Fox Lake Correctional Institution.  At all times relevant to this lawsuit, he was incarcerated at the Wisconsin Secure Program Facility (WSPF), where defendants are employed.  Gary Boughton is the warden, Trina Kroening-Skime is the corrections program supervisor and supervises the chaplain, Daniel Goff is the chaplain, and Julie Payne is an institution complaint examiner.

### B.  General Ramadan Practices

Plaintiff is Muslim and has been practicing the religion of Islam since he was admitted to the Department of Corrections in 2013.  A central part of Islam is Ramadan, which takes place during the ninth month of the Arab lunar calendar.  Plaintiff holds the religious belief

that during the entire month of Ramadan, it is obligatory for Muslims like himself to abstain from food and drink in a complete fast from the time the sun rises until the sun sets.

Inmates incarcerated in Division of Adult Institutions (DAI) facilities are provided opportunities to pursue lawful religious practices.  DAI accommodates Muslim inmates by offering them the opportunity to sign up to participate in Ramadan.  At WSPF, inmates who sign up for the Ramadan fast are provided meal bags that contain a day's worth of food to be eaten after sundown and before sunrise.

Pursuant to DAI Policy 309.61.03, inmates wishing to participate in Ramadan must sign up for the accommodation at least 60 days in advance of the event.  This 60-day advance sign-up policy applies to all multi-day or temporary religious meal accommodations, including Baha'I fasting, Kosher for Passover, Ramadan fasting, Tisha B'Av fasting and Yom Kippur fasting.  Inmates sign up for Ramadan by submitting a request to the chaplain or his designee. Plaintiff agreed at his deposition that the process for signing up for Ramadan is "pretty simple."  The policy allows exceptions to the deadline in only two specific circumstances:  (1) an inmate's incarceration begins fewer than 60 days from the start of Ramadan; and (2) an inmate who is participating in Ramadan is transferred to WSPF, either during Ramadan or within 60 days prior to the start of Ramadan, and had submitted a timely request at the prior facility.

In 2018, plaintiff missed the sign-up deadline because he did not know when Ramadan was going to start.  He submitted a request the week that Ramadan started after another inmate asked if he had signed up.  Defendant Goff responded to plaintiff's request the next

day, telling plaintiff that he would not able to receive the Ramadan accommodation because his request came too late.

### C.  2019 Ramadan

In 2019, the Ramadan fast occurred from May 6 to June 3.  The deadline to sign up to participate in the Ramadan fast was March 8.  Defendant Goff made an appearance at the last Friday Islamic service in February 2019 to remind inmates that they needed to submit a request before March 8.

Plaintiff's name was not added to the Ramadan participant list.  (The parties dispute whether plaintiff submitted a timely request.  Plaintiff says he submitted a request in late February 2019, but Goff never responded or acknowledged it.  Goff says he did not receive a request from plaintiff.  Neither party has presented any evidence about what may have happened to plaintiff's alleged request.)  Goff's usual practice upon receiving a timely request was to save the request in a binder and send out a confirmation to the inmate within one business day of receiving the request.  (The parties have presented no evidence that plaintiff and other inmates were aware of this practice, that the practice is part of the institutional policy regarding religious meal requests, or that other institutions use a similar practice.)

Plaintiff next saw defendant Goff at Friday prayer about four weeks after the Ramadan sign-up deadline had passed.  He asked if he was on the meal list to fast for Ramadan because he had overheard other inmates asking Goff whether they were on the list.  Goff told plaintiff that he was not on the list because he had not received a request from plaintiff.  Plaintiff told

4

Goff that he had sent him a request for Ramadan meals about 4 weeks earlier.  Goff told plaintiff that he would check again to see if he had missed the request, but that as of that time, plaintiff was not on the Ramadan list.

On April 3, 2019, plaintiff wrote to Goff, stating that he had made a request to be placed on the Ramadan meal list well before the March 8 deadline and asking to be placed on the list at that time.  Goff responded the following day, stating that he could not add plaintiff to the list because it was past the state-established sign-up date for Ramadan. Plaintiff followed up with a second note on either April 3 or 4, 2019, stating that he had sent a timely request and that there was plenty of time to add him to the list so that he would be able to fast.  On April 5, Goff responded that if he had received a request from plaintiff by March 8, "it was processed and a response sent" but he had no record of a request.  (Both parties agree that it is possible that Goff never received the request.  Plaintiff says that he does "not know if Goff received and ignored my request, lost my request, or if it was delivered to him at all, I was never able to determine that."  Dkt. #29, ¶ 3.)

The DAI policy does not give Goff the discretion to add an inmate to the Ramadan participant list after the sign-up deadline if a timely request was not received.  In Goff's opinion, if he had added plaintiff to the list and other inmates had found out, it could have appeared that Goff was favoring plaintiff over others, and doing so could have led to tension and hostility among inmates and staff.  According to Goff, adding plaintiff to the participant list after the deadline would have been contrary to established policy and protocol and destroyed his or the staff's credibility in enforcing that policy in the future.

Plaintiff testified at his deposition that Goff "may have been totally honest or it's some staff member may not have given it to him because it goes through several different hands before it lands in his mailbox." Inmates in general population put their correspondence for staff into a box on the unit. Staff place correspondence addressed to Goff in his mailbox.

Over the week starting April 5, 2019, plaintiff appealed Goff's denial to his supervisors, including defendant Kroening-Skime (on April 5 and 11, 2019), the deputy warden and defendant Warden Boughton. Kroening-Skime responded that plaintiff had missed the deadline, which is established by policy and followed by the department's Religious Practice Advisory Committee. The warden's office secretary, Darren Miller, handled the requests sent to Warden Boughton and the deputy warden. Miller referred plaintiff to the relevant sign-up policy. Defendant Boughton did not personally see the request.

On April 23, 2019, plaintiff submitted an offender complaint, stating that Goff never received his request to fast for Ramadan and that he was never put on the list for fasting. Defendant inmate complaint examiner Payne received and processed the complaint. After investigating, Payne recommended the dismissal of plaintiff's complaint based on the strict deadline in DAI Policy 309.61.03. In Payne's judgment, the dispute about whether plaintiff sent the request before the deadline did not matter because the chaplain did not receive a request until after the deadline had passed. Payne has no authority to override a DAI Policy or make an individual exception to the policy. Although she has authority to recommend

6

affirmance of an offender complaint if she believes an institution policy or procedure was not followed, that was not the case with plaintiff's complaint.

Boughton accepted Payne's recommendation and dismissed plaintiff's complaint on April 29, 2019.  Plaintiff submitted an appeal to the office of the Secretary of Corrections office, which dismissed the appeal on May 24, 2019.

Plaintiff was not provided Ramadan meal bags in 2019.  He borrowed funds from his mother and from a fellow inmate to purchase food from the canteen to help him maintain his daytime fast.  Plaintiff was able to purchase food from the canteen on a weekly basis. However, he was not able to purchase enough food to maintain his fast for more than four days.  On the fifth day of Ramadan, plaintiff was not able to eat because he had run out of food and was not allowed to bring food back to his cell from institution meals to eat after sundown.  Plaintiff became too hungry and was forced to stop his fast on the sixth day of Ramadan.

### D. Food Ordering and Ramadan Planning at WSPF

Plaintiff was hired to work in the food services at WSPF in mid-November 2019.  For about eight months, he worked closely with food service leaders and other inmate workers in various different roles, including taking weekly inventory in the kitchen to help with the placement of food orders, prepping and putting together food for meals and helping unload trucks when orders arrived.  (Plaintiff proposes several findings of fact related to information he obtained about food ordering and preparation during conversations with WSPF's food

service manager, Samantha Brown, but the content of those conversations is inadmissible hearsay.  Therefore, I have not considered his proposed findings of fact.  In addition, defendants have submitted a declaration from Brown in which she counters or explains points made by plaintiff about the prison's food supply.  Dkt. #35.  Plaintiff also lacks sufficient personal knowledge to testify about whether or how the amount of food prepared for general population inmates changed during Ramadan and whether the prison is able to accommodate late Ramadan requests.  Although he avers that he helped prepare the special diets for inmates and "paid close attention" to the meal preparation at WSPF, he has no special training or background in food planning for institutions and was not personally involved in planning or cooking the meals for inmates.  Therefore, I have not considered his proposed findings of fact or his responses to defendants' proposed findings of fact which concern matters that he has not shown to be within his personal knowledge.)

Planning for Ramadan each year is a considerable undertaking with many moving parts.  It is important that each step of planning occurs in a timely fashion if the dietary needs of all 23,000 inmates are to met within the overall budget for the Department of Corrections.  (Plaintiff attempts to dispute this fact by saying that Ramadan meal menus rarely change from year to year, but his assertion is based only on hearsay, which is inadmissible.)  The food services department at WSPF starts planning for Ramadan several months in advance.  Before Ramadan each year, food services administrators at the institutions across the state submit the month-long Ramadan menus to the dietetic services director for approval.  Menus are created for general fare, Halal, and plant-based Ramadan

bags.  At the same time, individual menus must be created for persons on medical diets who need low-sodium, low fat, or low cholesterol diets, or who have food allergies.  The menus are reviewed and considered for any potential changes based on product availability, ingredients, packaging, or serving size.  Changes to the menu may be required by updates to nutrition standards.  Some institutions also have unique security needs to consider.  For example, inmates at WSPF cannot receive the same brand of orange juice as other inmates because they are not allowed packaging with foil lids.

After the menus have been approved, the Department of Corrections tries to give the vendor up to eight weeks advance notice of food orders, to allow the vendor to acquire adequate stock to supply the entire Department of Corrections.  If sufficient stock cannot be provided because of crop conditions or other shortages, menus may need further adjustment.  The department can estimate quantities of food needed for Ramadan based on the prior years' data, but participation can vary significantly from year to year.  From 2013 to 2019, Ramadan fast participants ranged from 764 to 888 across the state and from 61 to 72 at WSPF.

After the menus are set and the vendor is on notice, the institutions recalculate their purchasing and production numbers as precisely as possible for the various Ramadan bags at each institution.  This alters the quantities needed for non-Ramadan meals as well.  In fiscal year 2019, the Department of Corrections served 26.9 million meals, at an average cost of $1.01 per meal at its self-operated sites.  The department's limited food budget does not provide sufficient funds to maintain excess inventory levels, and a food shortage creates

security problems if the last inmates served are given a substitution in place of a favorite item. It is therefore important to order the precise quantities needed to meet these competing objectives. Once the order is placed, it can take up to four weeks for food orders to arrive, depending on order quantity and the availability of products.

Food must arrive at the institution two weeks prior to the start of Ramadan to insure that food is received, thawed per appropriate standards, and ready to prepare and serve. Meals are prepped three to four days before the food is served. Shortening the time frame for inmates to sign up for this multi-day accommodation would drastically affect the food services' ability to deliver a product for the inmate population that meets or exceeds the food services' quality and nutrition standards.

In the case when an exception must be made for inmates transferring into WSPF, food services will adjust to accommodate that inmate, but this adjustment either interferes with the following day's meal or makes difficulties for kitchen staff, who need to prepare extra meals with a limited food supply. These particular exceptions are permitted in the DAI policy because it is unlikely that more than a few inmates will need to be accommodated under those circumstances. If all inmates could sign up late for Ramadan, food services would not be able to do the necessary planning to meet the food production needs for both the general menu and Ramadan participants.

(Plaintiff attempts to dispute these facts by saying that WSPF orders its own food, that food orders are received weekly, the quantity of food for the general population does not change during Ramadan, food items served during Ramadan are regularly stocked all year and

10

there is always excess food from meals that is discarded, but he has insufficient personal knowledge of these matters and has based some of his assertions on inadmissible hearsay.)

## OPINION

Plaintiff contends that defendant Chaplain Goff failed to provide him the Ramadan fasting diet in 2019, even though plaintiff says that he requested the diet before the deadline for doing so and that defendants Warden Boughton, Program Director Kroening-Skime and Complaint Examiner Payne failed to help him when he complained about not being placed on the Ramadan list.  Plaintiff is proceeding on claims under the free exercise clause of the First Amendment against defendants Boughton, Kroening-Skime and Goff in their individual and official capacities and against defendant Payne in her individual capacity.  In addition, he is proceeding on a RLUIPA claim for declaratory and injunctive relief against defendants Goff, Boughton and Kroening-Skime.  Because RLUIPA provides broader protection for religious liberty than does the First Amendment, Holt v. Hobbs, 574 U.S. 352, 357 (2015), I will start by addressing that claim.  If plaintiff's RLUIPA claim fails, his free-exercise claims under the First Amendment would likewise fail.  Tanksley v. Litscher, No. 15-cv-126-jdp, 2017 WL 3503377, at *3 (W.D. Wis. Aug. 15, 2017).

## A.  RLUIPA

### 1.  Merits of claim

11

RLUIPA prohibits prisons receiving federal funds from imposing a "substantial burden" on a prisoner's "religious exercise" unless the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). In applying this statute, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief. Holt, 574 U.S. at 360-61. Defendants do not dispute that plaintiff has a sincere religious belief in fasting during Ramadan.

Plaintiff also has the burden to show that defendants substantially burdened his religious exercise. Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008). If plaintiff meets this threshold, defendants must demonstrate that their actions further "a compelling governmental interest" by "the least restrictive means." Holt, 574 U.S. at 357; Cutter v. Wilkinson, 544 U.S. 709, 712 (2005). Although defendants concede that plaintiff was not able to participate in the 2019 fast, they argue that requiring inmates to register in advance for participation in Ramadan does not impose a substantial burden on the inmates' exercise of their religious beliefs and, even if it does, it is the least restrictive means to further the compelling interests in prison administration and cost control.

The Supreme Court has defined a "substantial burden" as something that "seriously violates [one's] religious beliefs," regardless of whether alternative means of religious exercise are available. Holt, 574 U.S. at 361 (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 717 n. 28 (2014)). Although the term "seriously" provides little more guidance than "substantial burden," the Court of Appeals for the Seventh Circuit has held that something more than just a "modest" violation is required. Schlemm v. Wall, 784 F.3d 362, 365 (7th Cir. 2015). Generally, "[t]he government imposes a substantial burden on a religious exercise

when it (1) compels the plaintiff to forgo his religious exercise; (2) prohibits the plaintiff from performing his religious exercise; or (3) presents the plaintiff a 'choice of incurring a serious penalty or engag[ing] in conduct that seriously violates [his] religious beliefs.'" Tanksley, 2017 WL 3503377, at *6 (quoting Eternal Word TV Network, Inc. v. Secretary of U.S. Dep't of Health & Human Services, 818 F.3d 1122, 1144 (11th Cir. 2016), in turn quoting Holt, 135 S. Ct. at 862) (alterations in original)).

In a brief argument, defendants contend that the 60-day deadline is not an "exceptional government-created burden" because it is a simple deadline that is easy to comply with. In support, they cite three district court cases that treat the issue in this way. Dorman v. BSO Chaplain's Office, No. 18-61392-CIV, 2020 WL 613812, at *4 (S.D. Fla. Feb. 10, 2020) (45-day registration requirement for participation in Passover service not "'egregious and unnecessary' restraint that would, in the ordinary course, 'substantially burden' an inmate's religious rights"); Aiello v. West, No. 13-CV-562-WMC, 2016 WL 4919969 (W.D. Wis. Sept. 14, 2016) (lengthening existing 60-day deadline for food items for Seder plate to 90 days was not substantial burden); McDaniels v. Sherman, No. C09-1296-JCC, 2010 WL 5620955, at *5 (W.D. Wash. Sept. 28, 2010), report and recommendation adopted, 2011 WL 197441 (W.D. Wash. Jan. 21, 2011) (six-week advance sign-up deadline for participation in Eid al-Fitr feast is not substantial burden). However, the Court of Appeals for the Seventh Circuit has rejected a similar argument about the relatively low burden associated with signing up for Ramadan meals. In Conyers v. Abitz, 416 F.3d

580, 585 (7th Cir. 2005), the court of appeals concluded that the circumstances of the case

mattered to the analysis:

> [Defendants] rest instead on the rigid and unsupported assumption that a
> sign-up deadline like the one imposed is a reasonable administrative
> requirement under any circumstances.  Nothing in this record indicates that
> convenience and notice to prison staff justified the rejection of Conyers's
> request to participate in the fast, especially since he missed the notification
> deadline by just four days and in fact alerted the defendants that he desired to
> participate in the Fast of Ramadan two days before it began.

Following this reasoning, Judge James Peterson has concluded in several cases that it

is not just the burden caused by the effort required to comply with the deadline that matters,

but the burden that follows non-compliance.  E.g., Lee v. Ewing, No. 18-CV-370-JDP, 2019

WL 4737057, at *5 (W.D. Wis. Sept. 27, 2019); Riley v. Ewing, No. 15-cv-592-jdp, 2019

WL 188511, at *6 (W.D. Wis. Jan. 14, 2019), aff'd, No. 19-1279, 2019 WL 4451078 (7th

Cir. Sept. 17, 2019).  Specifically, he explained that

> It is clearly established that forcing an inmate to choose between daily
> nutrition and religious practice is a substantial burden on the inmate's religious
> practices that may violate the First Amendment.   Thus, a policy that
> completely denied Riley the ability to fast during Ramadan, or made fasting
> effectively impossible, would clearly impose a substantial burden on Riley's
> religious practice.

Riley, 2019 WL 188511, at *6 (internal quotation and citation omitted).  See also Brim v.

Donovan, No. 15-cv-658-jdp, 2017 WL 3972519, at *9 (W.D. Wis. Sept. 7, 2017)

("[F]orcing an inmate to choose between daily nutrition and religious practice is a substantial

burden. That is exactly the choice that Brim was faced with because his name wasn't on the

Ramadan meal list.") (internal quotation and citation omitted).

14

In this case, it is undisputed that plaintiff had to arrange and pay for his own Ramadan meals own and was not able to maintain his fast for more than a four days of Ramadan without going hungry. Therefore, I conclude that it is a disputed fact whether the 60-day sign-up deadline imposed a significant burden on plaintiff's religious exercise under the circumstances in this case.

Defendants also contend that summary judgment is appropriate because the sign-up policy is the least restrictive means of furthering compelling government interests. They have identified the compelling government interests as "prison administration and cost control" dkt. #19 at 11, and provided a detailed explanation of the lengthy advance planning that goes into ordering food and preparing prisoners' meals generally and for Ramadan meal bags in particular. (As discussed above, plaintiff relies on his eight-month stint as a food service worker in a failed attempt to dispute defendants' assertion that the creation and distribution of Ramadan meal bags takes significant advanced planning that affects both financial and security issues at the prison. However, plaintiff has not provided sufficient admissible evidence to dispute defendants' assertion. Dangerfield v. Ewing, No. 18-CV-737-JDP, 2020 WL 94758, at *2 (W.D. Wis. Jan. 8, 2020) (finding same).)

RLUIPA affords some deference to officials in prison operations. "[I]n applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting." Holt, 574 U.S. at 369. However, the standard that Congress enacted in RLUIPA is an "exceptionally demanding" one for the government. Id. at 356, 364 ("Congress enacted RLUIPA . . . in order to provide very broad protection for

religious liberty."). "Saving a few dollars is not a compelling interest, nor is a bureaucratic desire to follow the prison system's rules." Schlemm, 784 F.3d at 365.

In this instance, however, I am persuaded by defendants' detailed explanation of the acquisition and preparation processes for special meals and conclude that a reasonably firm 60-day notification deadline without a large number of exceptions and late requests is the least restrictive means of accomplishing the department's interests. Lee, 2019 WL 4737057, at *6 (finding same). The state has shown in this case and in multiple other cases that prisons must prepare for Ramadan well in advance, and that prisons are unable to accommodate a large number of exceptions and late requests. Riley v. Ewing, 777 Fed. App'x 159, 162 (7th Cir. 2019) (state "presented evidence that the logistical challenges associated with ordering, receiving, and preparing enough Ramadan meals justified limiting the exceptions to those who entered the prison after the sign-up deadline"); Dangerfield, 2020 WL 94758, at *4 ("[P]rison officials need a reasonably firm deadline, because they would not be able to accommodate a large number of late requests. After all, a late request to be placed on the Ramadan list is a late request for 60 special meals."). Although the undisputed facts show that the prisons are able to accommodate limited exceptions for inmates transferring into the prison after the deadline, defendants have shown that this is because such a situation would require accommodation of no more than a few inmates. As defendants contend, if an institution accepted any inmate's claim that a request was lost in the mail, the 60-day sign-up deadline would lose its meaning.

However, as in Lee, defendants' explanation does not fully address situations like plaintiff's, in which he contends that he complied with the 60-day deadline but was denied Ramadan meals because the chaplain did not receive the request through any fault of plaintiff's. Id. ("Lee's situation illustrates the basic problem: in any system as complex as the one used to sign up for Ramadan meals in Wisconsin's prisons, mistakes will be made. . . . But DAI policy affords no exception that would correct such errors."). Defendants argue that the onus must be on the inmates to follow up with the chaplain if they do not receive any acknowledgment of receipt. They say that in this case, plaintiff should not have waited four weeks to check in with Chaplain Goff about being on the list. However, the policy does not require inmates to follow up on their requests, and there is no evidence showing that plaintiff knew he had the responsibility to check with Goff before the 60-day deadline passed. In addition, even though Goff says that it is his practice to send confirmations to inmates who submit timely Ramadan requests, this confirmation step is not part of the formal policy, and there is no evidence that plaintiff and other inmates were made aware that Goff sends confirmations. Finally, defendants do not cite any authority suggesting that the least restrictive means to regulate religious meals would include requiring prisoners to confirm with prison staff that they had lost, never received or are ignoring prisoners' requests.

The least restrictive means may include some mechanism to prevent or correct the problem that plaintiff alleges in this case. In addition, the state and plaintiff may be able to provide additional evidence about DOC procedures and the compelling governmental interests at stake. Therefore, I conclude that, based on the summary judgment evidence, the

state has failed to meet its burden to show that a 60-day notice policy without a confirmation or follow-up requirement is the least restrictive means of furthering its compelling interest in getting advance notice of those who intend to participate in the Ramadan fast.  Accordingly, defendants' motion for summary judgment will be denied as to plaintiff's RLUIPA claim.

## 2.  Proper defendants

As discussed in the screening order, courts have long held that money damages are not available under RLUIPA because the statute has been interpreted as providing only injunctive and declaratory relief.  Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012).  In a recent case, the United States Supreme Court held that government officials may be sued for money damages in their individual capacities under RLUIPA's sister statute, the Religious Freedom Restoration Act (RFRA).  Tanzin v. Tanvir, __ S. Ct. __, No. 19-71, 2020 WL 7250100, at *4 (U.S. Dec. 10, 2020).  Although both statutes contain the same operative provisions about seeking "appropriate relief" against the government, government officials and "other person[s] acting under color of law," 42 U.S.C.A. §§ 2000bb-1 and -2 and 2000cc-2 and -5, the Court did not discuss whether its holding also applied to RLUIPA, and no other court has discussed the issue.  In any event, for most of the same reasons discussed below in conjunction with plaintiff's First Amendment claims, plaintiff has not presented sufficient evidence from which a reasonable jury could conclude that any of the defendants are liable in their individual capacities for any burden placed on his religious exercise.

18

A plaintiff is entitled to prospective injunctive relief only if "there exists some cognizable danger of recurrent violation, something more than the mere possibility." Nelson v. Miller, 570 F.3d 868, 882 (7th Cir. 2009) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). A theoretical possibility "supported only by speculation and not evidence" will not suffice. Id. Although plaintiff has been transferred from the Wisconsin Secure Program Facility, the 60-day Ramadan sign-up deadline applies to all Wisconsin prisons, so his claim for injunctive relief is not moot. However, because defendants Goff, Boughton and Kroening no longer control plaintiff's Ramadan requests, I will substitute Willard West, the Division of Adult Institutions religious practices coordinator, as the defendant for plaintiff's RLUIPA claim. Lee, 2019 WL 4737057, at *7 (doing same). See also Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (defendant may be enjoined if he has authority to provide requested relief).

### B.  First Amendment

Plaintiff has brought First Amendment free-exercise claims for damages against defendants in their individual capacities for their role in denying him Ramadan meals in 2019. To establish a free exercise claim, plaintiff must "submit evidence from which a jury could reasonably find that the defendant[ ] personally and unjustifiably placed a substantial burden on his religious practices." Neely-Bey Tarik-El v. Conley, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting Thompson v. Holm, 809 F.3d 376, 379 (7th Cir. 2016)). A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to

violate his beliefs." Thomas v. Review Board, 450 U.S. 707, 718 (1981).  In the prison context, such a burden is justified if it is "reasonably related to a legitimate penological interest."  Thompson, 809 F.3d at 380 (citing Turner v. Safley, 482 U.S. 78, 89–91 (1987)). Turner requires the court to consider four factors:  (1) whether a valid, rational connection exists between the policy and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right would have a negative impact on guards, other inmates, and the allocation of prison resources; and (4) whether obvious, easy alternatives exist as evidence that the regulation is not reasonable. Turner, 482 U.S. at 89-91; Tarpley v. Allen County, Indiana, 312 F.3d 895, 898 (7th Cir. 2002).

Plaintiff's claim against defendant Goff is based on Goff's failure to include plaintiff on the Ramadan list even though plaintiff allegedly filed a timely Ramadan meal request. Although the parties dispute whether plaintiff actually filed a request, they agree that Goff did not place plaintiff on the Ramadan list.  However, plaintiff has not presented any evidence to suggest that Goff ignored an alleged properly filed request or otherwise thwarted plaintiff's attempt to practice his religion.  In fact, plaintiff admits that he does not know what happened to his request, which could have been lost in the prison mail system.  Plaintiff further contends that Goff had a duty to place him on the Ramadan list after plaintiff brought it to Goff's attention that he had filed a timely request.  However, it is undisputed that the DAI policy does not provide any exceptions for late requests, even for inmates who say that

they sent a request before the deadline.  Without more, a reasonable jury would not conclude even under plaintiff's verison of the events that Goff violated plaintiff's rights by not placing him on the Ramadan list after the deadline for doing so had run.

Plaintiff's First Amendment claims against defendants Boughton, Kroening-Skime and Payne are based on defendants' affirmance of Goff's decision and their refusal to make an exception for plaintiff's late request.  Like Goff, these defendants were following DAI policy. There is no evidence that any of the WSPF defendants had the authority to change the statewide policy or grant an exception that the policy did not provide.  Further, as defendants argue, reviewing an inmate complaint does expose the reviewer to § 1983 liability.  Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care.  That can't be right.").  See also George v. Smith, 507 F.3d 605, 609-610 (7th Cir. 2007) ("[A] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Defendants also are entitled to summary judgment with respect to plaintiff's individual capacity claims under the doctrine of qualified immunity.  That doctrine shields officials from civil liability so long as their conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (internal quotation omitted).  A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012).  In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  Plaintiff bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity.  Hernandez ex rel. Hernandez v. Foster, 657 F.3d 463, 473 (7th Cir. 2011).

Plaintiff says that it is clearly established that prisoners have a right to a diet consistent with their religious beliefs and that prison officials cannot force inmates to choose between their religious practice and adequate nutrition.  That is true in a basic sense, but that proposition is far too general to resolve the question whether the deprivation in this case violated a clearly established right.  When considering whether qualified immunity applies, courts cannot "define clearly established law at a high level of generality." Mullenix, 577 U.S. at 12.  The "dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Id. (quoting al-Kidd, 563 U.S. at 742).  In other words, "the clearly established law must be 'particularized' to the facts of the case." White v. Pauly, __ U.S. __, 137 S. Ct. 548, 552 (2017) (citation omitted).  See also City of Escondido, Cal. v. Emmons, __ U.S. __, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity.").

Plaintiff does not identify a Supreme Court or court of appeals case that supports his specific free-exercise claims.  I also have not found any such cases defining the scope of an inmate's rights regarding the 60-day deadline where the request was not received through no fault of the inmate.  Lee, 2019 WL 4737057, at *8 (finding similar).

This leaves plaintiff's official capacity claims against defendants Boughton, Kroening-Skime and Goff, which challenge the policy itself.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (suit against public official in official capacity is effectively suit against prison itself).  To bring an official-capacity claim, plaintiff must show that a policy or custom of the government entity played a part in the alleged constitutional deprivation.  Id.; Lewis v. City of Chicago, 496 F.3d 645, 656 (7th Cir. 2007).  As with RLUIPA, money damages are not available, so official-capacity claims are limited to injunctive or declaratory relief regarding the challenged government policy.  Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012).

Plaintiff's First Amendment claim regarding the policy itself may proceed for the same reasons his RLUIPA claim may proceed.  Although the standards for such claims are slightly different, I have concluded that questions remain as to whether the policy substantially burdened plaintiff's religious practice, the procedures and governmental interests at stake and possible mechanisms to prevent or correct the problem that plaintiff alleges in this case.  However, as I explained with respect to plaintiff's RLUIPA claim, defendants Goff, Boughton and Kroening-Skime no longer have any responsibility for the policy regarding religious meals for plaintiff, who is now incarcerated in a different prison.  Therefore, defendant West is also

the proper defendant for plaintiff's official capacity claim under the free exercise clause of the First Amendment.

## C.  Next Steps

Because the only remaining remedies available to plaintiff are equitable in nature, plaintiff has no right to a jury trial.  Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 966 (7th Cir. 2004) ("There is no right to a jury where the only remedies sought (or available) are equitable.").  Therefore, I am striking the March 15, 2021 jury trial and the pretrial deadlines associated with it.

In addition, it is the court's belief that further written input from the parties would be helpful and possibly avoid the need for a bench trial.  Therefore, I will give the parties an opportunity to submit additional evidence and argument on the following questions: (1) whether a 60-day notice policy without a confirmation or follow-up requirement substantially burdened plaintiff's religious practice; and (2) whether such a policy is the least restrictive means of furthering the state's compelling interest in having advance notice of those who intend to participate in the Ramadan fast.  In particular, the parties should address whether there are possible mechanisms—such as a confirmation process or a follow-up requirement— to prevent or correct the problem that plaintiff alleges in this case.  It would seem appropriate for the state to provide some sort of procedure for the chaplain, the inmate, or both, to double check or confirm the inmate's placement on the Ramadan list before the 60-day deadline has passed so that no exception is needed and the state has the advance notice that

it needs to provide the special meals.  For example, as discussed above, there is some evidence that Chaplain Goff sent confirmations to inmates from whom he had received timely requests.  However, it is unclear from the current record how this system worked, whether it is feasible to implement on a statewide basis and what burden, if any, such a mechanism would impose on either the state or the affected inmates.

Therefore, I will give defendant West until February 19, 2021, to provide additional evidence and argument regarding these issues.  Plaintiff shall have until March 12, 2021 to respond.  After hearing from the parties, the court will schedule a bench trial, if necessary.


ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Gary Boughton, T. Kroening, Daniel Goff and J. Payne, dkt. #18, is GRANTED IN PART and DENIED IN PART:

1.  The motion is DENIED with respect to plaintiff's RLUIPA and First Amendment free exercise claims for declaratory and injunctive relief regarding the denial of Ramadan meals under the 60-day deadline policy.  Defendant Willard West will be substituted as the sole defendant for these claims.

2.  The motion is GRANTED in all other respects.  Defendants Goff, Boughton, Kroening and Payne are DISMISSED.

3.  The March 15, 2021 trial date and all other pretrial deadlines are STRUCK.

4.  Defendant West shall have until February 19, 2021 to submit further evidence and argument regarding whether the 60-day sign up deadline substantially burdened plaintiff's religious practice in this case and whether the existing sign-up policy is the least restrictive means of furthering compelling state interests.  Plaintiff shall have until March 12, 2021 to respond.

Entered this 5th day of January, 2021.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

26